311 So.2d 381 (1975)
Johnny Diamond HELTON, Appellant,
v.
STATE of Florida, Appellee.
No. W-217.
District Court of Appeal of Florida, First District.
April 24, 1975.
*382 Alan R. Parlapiano, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., for appellee.
BOYER, Acting Chief Judge.
We here consider an issue of first impression in this State: What degree of intent, if any, is the State required to prove in order to convict an accused of the crime of escape?
Appellant, defendant below, charged with escape as defined by F.S. 944.40, was convicted, and sentenced to serve three years in the State Penitentiary. It seems that on the night of December 24, 1973, appellant was lawfully incarcerated in Cell Block "E" of the Alachua County Adult Detention Center. The next morning, appellant and seven other inmates left Cell Block "E" without permission and did not immediately return. Approximately two weeks later, appellant made several calls to the Alachua County Sheriff's office from Louisville, Kentucky, and agreed that he would come back to Gainesville and turn himself in, in exchange for the Sheriff's office promise not to notify the authorities in Louisville for two days. Rather than turning himself in within two days, appellant surrendered himself to the authorities two weeks after his conversations with the Sheriff's office, or approximately one month after leaving the Detention Center.
At trial, the trial judge refused to allow the defense to introduce evidence of intoxication, on the ground that intent is not an element of the crime charged. The proffered evidence showed that the jailer at the Detention Center gave vodka to the inmates on the night of the escape. The effect of the inebriating beverage on the appellant and his fellow inmates was colorfully portrayed by defense counsel in closing argument to the jury as follows:
"Twas the night before Christmas, when all through the jail
Not an inmate was stirring, they couldn't make bail.
The stockings were hung by the cell door with care
In hopes that St. Nicholas would soon be there:
The inmates were huddled alone in their beds
While visions of freedom danced in their heads
And guards in their uniforms and John in his rack
Had just settled down for a long winter's nap,
When up on the roof there arose such a clatter,
John sprang from his bed to see what was the matter.
Away to the window he flew like a flash,
Tore open the cell door and threw up the sash.

*383 When what to his wondering eyes should appear
But a miniature sleigh and eight tiny reindeer,
With a little old driver, so lively and quick
He knew in a moment it must be St. Nick.
More rapid than eagles his courses they came,
And he whistled and shouted, and called them by name:
Now, Macquire, now Bass, now Fillingame, Newman,
On, Ingram, on Suggs, on Crosby, and Helton.
To the top of the porch, to the top of the wall
Now dash away, dash away, dash away all."
We have been cited to no definitive Florida case as to whether intent is a necessary element to the crime of escape, and independent research has failed to reveal any. We must, therefore, turn to other jurisdictions for purposes of analysis. It should first be noted that the jurisdictions are split on this issue. Some have ruled that intent is not an inherent element of the crime of escape: State v. Kiggins, 86 S.D. 612, 200 N.W.2d 243 (1972). People v. Spalding, 17 Mich. App. 73, 169 N.W.2d 163 (1969); State v. Leckenby, 260 Iowa 973, 151 N.W.2d 567 (1967); Wiggins v. State, 194 Ind. 118, 141 N.E. 56 (1923); Alex v. State, 484 P.2d 677 (Alaska 1971); State v. Marks, 92 Idaho 368, 442 P.2d 778 (1968). Other courts have held contra: Riley v. State, 16 Conn. 47 (1843); Gallegos v. People, 159 Colo. 379, 411 P.2d 956 (1966); State v. Morton, 293 A.2d 775 (Me. 1972); State v. Hendrick, 164 N.W.2d 57 (N.D. 1969); Cassady v. State, 247 Ark. 690, 447 S.W.2d 144 (1969); United States v. Nix, 501 F.2d 516 (7th Cir.1974). A slight numerical majority exists in favor of the proposition that intent is not an element of the crime.
In considering this issue, we are not concerned with the weight of sheer numerical superiority: We look instead to justice and fairness, and on that foundation conclude that the crime of escape necessarily entails as an essential element thereof the intent to escape as well as the act of leaving, or being absent from, lawful custody. (See United States v. Nix, supra)
Assume the case of a prisoner, X, who, as a member of a road gang, falls asleep under a shady oak tree during a rest break and is left behind by a negligent guard. Upon waking up, X realizes what has happened and dutifully sets forth upon the highway in an effort to return to his place of imprisonment. In the meantime, however, the authorities have discovered X's absence and have begun searching for him. Under these circumstances if intent is not a necessary element of the crime, X could be convicted of escape. As another example, assume that while X is being returned to his place of confinement the vehicle in which he is being transported is involved in an accident and the driver is severely injured. Is X to be convicted of escape if he leaves the scene in search of help? We think not.
Our conclusion is buttressed by the line of cases which have recognized the "narrow but time-honored defense of necessity available to a prisoner whose escape has been motivated by sufficiently perilous circumstances ..." 16 Cr.L.Rptr. 2375. In California, where intent has been held not to be an element of escape, a Court of Appeal has held that two women prisoners would be allowed to claim necessity as a defense to the crime of escape where the proffered evidence showed that the two women had been threatened by a group of lesbian inmates who told them they were to perform lesbian acts. (People v. Lovercamp, 43 Cal. App.3d 823, 118 Cal. Rptr. 110, opinion filed December 11, *384 1974) A Michigan Court of Appeal has also held that necessity may, under severely limited circumstances, constitute a valid defense to escape. (People v. Harmon, 53 Mich. App. 482, 220 N.W.2d 212 (1974)) These cases implicitly recognize that a prisoner should not be punished for escape where he or she does not leave confinement with the intent of eluding lawful authority.
We therefore hold that there are two elements to the crime of escape: The physical act of leaving, or not being in, custody coupled with the intent to avoid lawful confinement. We hurriedly note that in providing intent, the State may rely on circumstantial evidence. (Simpson v. State, 1921, 81 Fla. 292, 87 So. 920; Edwards v. State, Fla.App.3rd 1968, 213 So.2d 274) Intent may be inferred from the circumstances. (Thompson v. State, Fla.App. 1st, 310 So.2d 448, opinion filed April 9, 1975) Nor is the State required to show that the intent to escape existed prior to, or even contemporaneously with, the physical act of escape. Even though a defendant may not possess the necessary mental element at the time he leaves confinement or custody, he may subsequently do so and thereby render himself criminally liable. (Chandler v. United States, 378 F.2d 906 (9th Cir.1967); Parent v. State, 31 Wis.2d 106, 141 N.W.2d 878 (1966)) As the Court noted in the Chandler case, "If defendants left the camp inadvertently while wandering in an intoxicated condition, they may not have had the intent to escape at the moment they left the confines of the prison camp. However, if they thereafter decided to seize the opportunity to take off for more hospitable climes, they would be guilty of escape or attempted escape, notwithstanding tardy formulation of the idea."
We do not here find it necessary to decide whether intoxication may be relied upon to prove lack of intent; nor do we decide whether, if intoxication may be relied upon, such intoxication must have been involuntary as distinguished from voluntary. It is clear that in either event appellant's conviction must stand. Whether he did or did not intend to escape at the time he followed the jingle bells of Christmas, the facts remain that he remained outside of lawful custody for approximately one month, two weeks after specifically promising to return. Intent therefore ceased to be a viable issue. (Chandler v. United States, supra)
We have considered the other points raised by appellant on appeal and find them to be without merit.
Affirmed.
McCORD and MILLS, JJ., concur.