347 So.2d 781 (1977)
Albert BAVERO, Appellant,
v.
STATE of Florida, Appellee.
No. CC-379.
District Court of Appeal of Florida, First District.
June 23, 1977.
John Henninger, St. Petersburg, for appellant.
Robert L. Shevin, Atty. Gen., Raymond L. Marky, Asst. Atty. Gen., for appellee.
McCORD, Acting Chief Judge.
This is an appeal from the judgment and sentence of appellant for the crime of escape. *782 During a pretrial proceeding, the assistant state attorney made an oral motion in limine requesting the trial court to require a proffer of the testimony of appellant and his witnesses concerning the admissibility of testimony on the issue of intent and the propriety of instructing the jury on such issue. After hearing the required proffer, the court ruled that the testimony was, as a matter of law, an insufficient defense and could not be presented to the jury. Appellant then withdrew his previously entered plea of not guilty and entered a plea of nolo contendere reserving his right to appeal the ruling of the trial court. A summary of the proffered testimony of appellant and witnesses presented by him is as follows:
Appellant was first incarcerated in May of 1974 at the Avon Park Correctional Institution and was classified Medical Grade 3 for work purposes while there. The prison system has four such classifications. Classification 3 limits a person to light work in an institution where a medical facility is available 24 hours a day. Appellant was paroled from the Avon Park Institution but in June, 1975, he was again incarcerated, this time at Lake Butler, Florida, where he was examined by prison doctors and was classified Medical Grade 1. Classification 1 is given if a person is physically fit to do any type of manual labor. It would be dangerous for a person in Classification 3 to be incarcerated in a road prison doing manual labor.
Appellant has been a life-long asthmatic. His original classification as Medical Grade 3 at Avon Park Correctional Institution was due to his asthmatic condition. After arriving at Lake Butler in June, 1975, and being classified as Medical Grade 1, appellant was transferred to the Gainesville Road Camp No. 38, a hard labor work camp. After arriving there appellant began expressing physical difficulties in meeting his daily work assignments due to his asthmatic condition. Upon stating one morning that he had asthma and did not feel like working, he was put in "the box" for punishment and upon being released two and one-half hours later was told he would work like anyone else or be put in the box and forgotten.
Appellant was furnished a spray mist inhaler by the prison doctor and the directions that came with it stated that he should not use it in excess of six times a day; that abuse of the inhaler could cause cardiac arrest. In order for appellant to fulfill the daily work assignments at the road camp he was forced to use the inhaler two to four times per hour because unless he did, his ability to breathe would be severely impaired and he felt that he would suffocate. He thus found himself on the horns of a dilemma in that if he took too much of the medication he faced the possible consequence of cardiac arrest, while if he avoided the medication, he faced the possibility of suffocation.
Appellant received several appointments with the road camp doctor who advised him to see the classification officer concerning appellant's contention that he was misclassified as Medical Grade 1 instead of Medical Grade 3. Appellant thereafter sought a conference with the classification officer on two occasions but was never afforded the opportunity to see him although the classification officer visited the camp two times during appellant's incarceration. In addition, in an attempt to bring his plight to the attention of Secretary Louie Wainwright, head of the Department of Offender Rehabilitation, appellant wrote a letter complaining of his asthmatic problem.
Believing that his health would be severely impaired should he stay at the road camp, appellant left the confinement of the camp on October 7, 1976. He was captured 10 or 11 hours later in the City of Gainesville. At the time of his arrest, he stated that he was attempting to bring his problems to the attention of the federal authorities in Jacksonville, Florida. During his proffered testimony, the following questions were asked of appellant to which he gave the following answers:
"Q. I am going to ask you again: Wasn't it your intention for a period of time, no matter how long or how short, when you left Gainesville Road Camp No. 38 to be out of the control of the Florida Division of Corrections?

*783 A. I never even thought of that, to be honest with you. The only thing I thought of was to get some kind of help. It wasn't a matter of escaping or getting out of anyone's control, it was more to get in someone else's control, you know, where I could be helped.
Q. In someone else's control. Was that someone else the Florida Division of Corrections to whom you had been committed or some other authority?
A. Well, yes, the Florida Division of Corrections maybe at a major institution, such as UCI where I am being confined now."
Appellant further testified that he has since been reclassified Medical Grade 3 at the Union Correctional Institution where he does no manual labor but has a work assignment to prepare vegetables to be cooked which does not affect his asthma.
The foregoing proffered testimony should have been allowed to go to the jury on the question of whether or not appellant's physical act of leaving custody was with the intent to avoid lawful confinement. In Helton v. State, 311 So.2d 381 (Fla. 1 DCA 1975), we held that there are two elements to the crime of escape: the physical act of leaving, or not being in, custody coupled with the intent to avoid lawful confinement. There, in discussing the question of whether or not lack of such intent should be recognized as a defense to a charge of escape, we said:
"Our conclusion is buttressed by the line of cases which have recognized the `narrow but time-honored defense of necessity available to a prisoner whose escape has been motivated by sufficiently perilous circumstances ...' 16 Cr.L. Rptr. 2375. In California, where intent has been held not to be an element of escape, a Court of Appeal has held that two women prisoners would be allowed to claim necessity as a defense to the crime of escape where the proffered evidence showed that the two women had been threatened by a group of lesbian inmates who told them they were to perform lesbian acts. (People v. Lovercamp, 43 Cal. App.3d 823, 118 Cal. Rptr. 110, opinion filed December 11, 1974) A Michigan Court of Appeal has also held that necessity may, under severely limited circumstances, constitute a valid defense to escape. (People v. Harmon, 53 Mich. App. 482, 220 N.W.2d 212 (1974)) These cases implicitly recognize that a prisoner should not be punished for escape where he or she does not leave confinement with the intent of eluding lawful authority."
In Lewis v. State, 318 So.2d 529 (Fla. 2 DCA 1975), the trial court had ruled as a matter of law that appellant's alleged defense to an escape charge was insufficient. There appellant contended that another inmate had made sexual advances toward him and threatened him with sexual battery; that he had complained to prison authorities, but they did not believe his fears and ordered his return to the other inmate's cell; that in fear appellant attempted to escape for the purpose of reporting the matter to Circuit Judge Williams and to avoid a possible sexual assault and battery. Another prisoner who left with him succeeded in fully escaping, but appellant climbed a radio antenna on the roof of the jail where he was later discovered. There the District Court of Appeal, Second District, said:
"In the recent case of Helton v. State our sister court in the First District explored the question of intent as being an element of the crime of escape. The court reviewed the conflicting cases throughout the country and sided with the slight numerical minority view that justice and fairness require intent as an essential element of escape. Its conclusion was buttressed by the line of cases which have recognized the `narrow but time honored defense of necessity available to a prisoner whose escape has been motivated by sufficiently perilous circumstances.' That court held, therefore, that there are two elements to the crime of escape; the physical act of leaving custody coupled with the intent to avoid lawful confinement. We agree. *784 Here, appellant denied a wilful intent to escape, pointing to his having failed to flee completely with his fellow `escapee.' He contended in his motion to quash that he was forced to leave confinement to avoid a sexual assault at the hands of Bobby Lane. He further contended that he was merely trying to reach Circuit Judge Williams to report the matter since the detention officers at the jail disbelieved his fears. If true, we think this could have been a valid defense insofar as it might establish a lack of wilful intent to avoid lawful confinement or at least create a reasonable doubt that there was one."
We agree with our sister court's analysis of our opinion in Helton and its application of the law to the circumstances in the case before it. The circumstances in Lewis in relation to intent and those in the case sub judice are closely parallel. In Lewis, if the jury believed the evidence presented by the defendant, it could find that he left confinement because of necessity rather than through a willful intent to avoid lawful confinement. The same is true in the case sub judice.
In a somewhat parallel situation, the Supreme Court, in Hall v. State, 136 Fla. 644, 187 So. 392 (1939), had before it for review a perjury conviction in which one of the defenses was coercion. The Supreme Court recognized that compulsion or coercion could be of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the defendant did not testify falsely. It pointed out, however, that the danger must be "real, imminent, and impending danger; or that under all the circumstances shown in evidence the defendant had reasonable grounds to believe that such danger was real, imminent and impending, and did so believe at the time she was testifying, and gave such false testimony because of such belief." Following this line of reasoning, we hold in the case sub judice that the proffered testimony should go to the jury and if the jury finds (or has a reasonable doubt that) under all the circumstances shown in the evidence presented by both appellant and the state, that appellant had reasonable grounds to believe that there was a real, imminent and impending danger to him of death or serious bodily harm if he did not leave the place from which he was confined and that he left because of such danger rather than with the intent to elude lawful authority, the jury should find him not guilty of the crime of escape.
Reversed and remanded for further proceedings consistent herewith.
DREW, E. HARRIS and MASON, ERNEST E., (Ret.) Associate Judges, concur.