353 So.2d 1263 (1978)
Raymond Woodrow WATFORD, Appellant,
v.
STATE of Florida, Appellee.
No. EE-412.
District Court of Appeal of Florida, First District.
January 19, 1978.
Michael J. Minerva, Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., Raymond L. Marky and Michael H. Davidson, Asst. Attys. Gen., for appellee.
MELVIN, Judge.
Appellant-defendant Watford had been lawfully committed to and was in the lawful custody of the Department of Offender Rehabilitation. He left custody of the department, and was charged and found guilty by a jury of unlawful escape.
On the crucial date of May 5, 1976, Watford was being transported from the Cross City Correctional Institution to work at a nearby Division of Forestry nursery. He was in the charge of a correctional officer and in a bus with other inmates. As the bus arrived at the nursery, a radio communication instructed the correctional officer to hold Watford for another officer who *1264 was coming for him. Watford, hearing the message, immediately, without permission, fled the bus into some nearby woods. His escape was promptly reported, and he was arrested in a Chiefland shopping center within a short period of time. Watford, at the time of his recapture, was wearing his prison uniform and offered no resistance.
At trial, Watford's proffered testimony was that he had been confined at the Cross City Correctional Institution in a minimum security group; that while being transported to work, he heard the radio directive from which he understood he was being transferred back to the Florida State Prison; that he wanted the opportunity to talk to the superintendent and find out the reason for the transfer; that he considered he was in line for parole consideration and did not intend to escape. The trial court denied the proffer and held, as a matter of law, that the proffer was insufficient as relating to the issue of intent. Defendant testified before the jury that he jumped from the bus and began running to someplace where he could contact the superintendent. To this the court sustained the state's objection. The defendant testified further that he had no intention to escape. The court also sustained the state's objection to this type of defense. Defendant was permitted to testify that he left the bus about 8:45 a.m. after hearing the radio communication; that he was later arrested in Chiefland before he talked with anyone concerning his intentions; and that he had been in the woods until he reach Chiefland where he was arrested about five minutes after his arrival.
Based upon the jury verdict, the trial court adjudged Watford to be guilty of unlawful escape, as charged, and committed him to the custody of the Division of Corrections. The trial judge certified as to defendant's fingerprints but not to the judgment and sentence as required by Section 921.241(1), Florida Statutes.
Defendant contends that the trial court erred in refusing to permit him to testify as to his purpose in leaving custody and as to his lack of intent to escape.
In Helton v. State, 311 So.2d 381 (Fla. 1st DCA 1975), this court held that the elements of the crime of escape are the physical act of leaving or not being in custody coupled with the intent to avoid lawful confinement. In holding intent to be a necessary element of the crime of escape, this court announced that it was joining the minority view of other jurisdictions, and stated:
"In considering this issue, we are not concerned with the weight of sheer numerical superiority: We look instead to justice and fairness, and on that foundation conclude that the crime of escape necessarily entails as an essential element thereof the intent to escape... ."
This court then proceeded to clearly point to several typical instances in which a prisoner may be separated from his lawful custodian without being able to control the circumstances, and further observed the line of cases which recognize the "narrow but time-honored defense of necessity available to a prisoner whose escape has been motivated by sufficiently perilous circumstances."
In Helton, however, we upheld the trial court's refusal to permit the defense to introduce evidence of Helton's claimed intoxication as a defense on the basis that, under the evidence presented, intent ceased to be a viable issue.[1]
See also Lewis v. State, 318 So.2d 529 (Fla. 2d DCA 1975), in which the Second District Court of Appeal reversed and remanded the trial court's order striking Lewis' motion to quash.[2] In so reversing, the court, citing Helton, supra, found that Lewis' allegations, if true, could have been a valid defense insofar as they might have *1265 established a lack of willful intent to avoid lawful confinement or at least create a reasonable doubt that there was one, and held that a defendant had a right to establish such a defense at trial.
In the more recent case of Bavero v. State, 347 So.2d 781 (Fla. 1st DCA 1977), Bavero left the confinement of a Gainesville road camp and was recaptured 10 or 11 hours later in the City of Gainesville. At his trial for the escape, Bavero proffered testimony to the effect that he had no intention to escape but, rather, that he was seeking medical assistance for a chronic asthmatic condition.[3]
The trial court ruled that Bavero's proffered testimony was, as a matter of law, an insufficient defense that could not be presented to the jury. In reversing, we held:
"... that the proffered testimony should go to the jury and if the jury finds (or has reasonable doubt that) under all the circumstances shown in the evidence presented by both appellant and the state, that appellant had reasonable grounds to believe that there was a real, imminent and impending danger to him of death or serious bodily harm if he did not leave the place for which he was confined and that he left because of such danger rather than with the intent to elude lawful authority, the jury should find him not guilty of the crime of escape."
In summary, we declare the general rule to be that when the State has established its right to legal custody and the conscious and intentional act of defendant of leaving the established area of such custody, the offense of escape is prima facie established. In such circumstances, the only viable defense to such a charge that may be available is necessity involving, as to such defendant, reasonable grounds to believe that he is faced with real, imminent and present danger of death, great bodily harm, or such type of danger to his health, if he does not temporarily leave his place of confinement. See Annot., 69 A.L.R.3d 678 (1976).
In the instant case, considering the evidence presented, and viewing the proffered testimony in the light most favorable to the defendant that his declared purpose in leaving custody was not to escape but merely to flee to a place where he would try to obtain from the superintendent an explanation for his transfer, fails to present for jury determination a viable issue as to necessity. Defendant had no legal right to flee lawful custody for such reason or excuse as the case may be.
The judgment appealed is affirmed; however, the cause is remanded to the trial court for the purpose of imposing judgment and sentence in the manner and form required by Section 921.241, Florida Statutes.
SMITH, Acting C.J., and ERVIN, J., concur.
NOTES
[1] Two weeks after his escape, Helton called Alachua County officials promising to surrender within two days. However, it was not until two weeks after this call, or fully a month after his escape, that Helton finally surrendered to custody.
[2] Although a second prisoner succeeded in escaping completely, Lewis was discovered on a radio antenna atop the county jail. In his motion to quash, Lewis alleged the defense of necessity found upon his fear of homosexual assault.
[3] Bavero's proffer indicated that he had been a life-long asthmatic; that he had previously held a prison medical classification requiring lighter work; that he had attempted unsuccessfully on numerous occasions to have his medical condition reclassified; that continued hard labor placed him in danger of death or serious bodily harm and that he had left confinement solely for the purpose of bringing his problems to the attention of other authorities.