374 So.2d 22 (1979)
Thomas W. FOUTS, Appellant,
v.
STATE of Florida, Appellee.
No. 78-1741.
District Court of Appeal of Florida, Second District.
July 6, 1979.
Rehearing Denied August 28, 1979.
*24 Robert E. Jagger, Public Defender, and Jack D. Hoogewind, Asst. Public Defender, Dade City, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Eula Tuttle Mason, Asst. Atty. Gen., Tampa, for appellee.
DANAHY, Judge.
This appeal from a conviction of escape presents questions which have not previously been addressed by a Florida appellate court. We hold:
1. It is reversible error in an escape trial to allow the state to reveal to the jury the nature of the crime for which the defendant was serving a term of imprisonment at the time of the alleged escape.
2. Voluntary intoxication is a defense to the crime of escape in the sense that evidence of the defendant's voluntary intoxication at the time of the alleged escape may be relied upon to establish that the defendant lacked the requisite intent to commit the crime.
3. Where there is evidence at trial from which it may reasonably be inferred that a defendant charged with escape ingested LSD prior to his unauthorized departure from the premises of a correctional institution, and within a relevant time period, it is error to exclude the opinion testimony of a psychiatrist as to the effect of that drug on the defendant's mind at the time of the alleged escape.
We find error in this case and reverse.
Appellant was charged by information with having escaped from his confinement as a prisoner at the Zephyrhills Correctional Institution. The information alleged that appellant had previously been convicted of sexual battery, a felony under Florida law, for which he had been sentenced to ten years. Appellant's motion to strike that allegation was denied, as was his motion in limine to prohibit any mention at trial of his prior conviction of sexual battery. In connection with both motions, appellant offered to stipulate that he was lawfully confined at the time of his alleged escape. He made the same offer at trial. Nevertheless, evidence of the prior conviction was admitted into evidence and, over appellant's continuing objection, references to the prior crime were permitted several times during the course of the trial. Appellant asserts that the trial judge erred in allowing the conviction of the prior crime to be revealed to the jury.
In support of his position, appellant argues that the existence of a prior conviction and sentence is not an element of the crime of escape. He points out that the escape statute, Section 944.40, Florida Statutes (1977), does not require the state to prove the nature of a prisoner's confinement, or to show that he was lawfully convicted, sentenced and sent to prison.
Appellant's observation with respect to Section 944.40 is correct; that section merely states that any prisoner who escapes from confinement shall be guilty of a felony of the second degree. However, the word "prisoner" is defined in Section 944.02 to mean any person who is under arrest and in the lawful custody of any law enforcement official or any person convicted and sentenced by any court and committed to any municipal or county jail, or to a state correctional institution. It seems clear to us that since only a prisoner can commit the crime of escape, it is essential in a trial for escape that the state establish the defendant's status as a prisoner. In appellant's case, his status as a prisoner arose from the fact that he had been convicted of a crime, sentenced, and committed to a state correctional institution. Therefore, the fact of his prior conviction was an essential element of the crime charged and the state was required to prove it. Accord, Warren v. State, 371 So.2d 219 (Fla. 2d DCA, 1979).
However, that does not mean it was proper to allow the state to introduce into evidence the nature of the prior crime. *25 The prejudicial effect in a criminal trial of evidence of a collateral crime committed by the accused has been recognized by our supreme court in decisions narrowly defining the circumstances in which such evidence may properly be allowed. State v. Harris, 356 So.2d 315 (Fla. 1978); Williams v. State, 110 So.2d 654 (Fla. 1959). References to a prior irrelevant crime record are as improper in a trial for escape as in a trial for any other crime. Warren v. State, supra. Where, as in this case, the fact of a prior conviction is relevant because it is an essential element of the crime, introduction of evidence of that fact is necessary and permissible, and perhaps not as prejudicial as in other cases because the very word "escape" no doubt alerts the jury to the fact that the defendant has had some prior contact with criminal law enforcement. Nevertheless, the prejudicial effect of such evidence must be kept to a minimum.
We approve and adopt the reasoning of the United States Court of Appeals of the Fifth Circuit in United States v. Spletzer, 535 F.2d 950 (5th Cir.1976), a case which involved a situation very similar to that presented here. The court in Spletzer pointed out that under federal law a federal conviction and confinement are elements of the offense of escape, but that the nature of the crime underlying the conviction is not relevant and is potentially prejudicial. The court said that the government in that case should have pursued one of two options; it could have accepted the offer of the defendant in that case to admit or stipulate to the fact that he had been previously convicted of a federal crime, or, if the government was unwilling to rely on such an admission or stipulation, it could have introduced into evidence a certified copy of the prior judgment of conviction with the language revealing the nature of the prior offense excised.
We hold that the state should have followed such a procedure in this case, and that the trial judge erred in not requiring the state to do so. Accordingly, we find that appellant is entitled to a new trial. A proper disposition of this case requires, however, that we consider additional points raised on this appeal.
Appellant introduced evidence in this case for the purpose of showing that he ingested LSD on the morning of the alleged escape. In response to that evidence, the trial judge instructed the jury that intent to avoid lawful confinement is an essential element of the crime of escape, and that intoxication from narcotics or drugs may exist to such an extent that an individual is incapable of forming such an intent.[1] The state made no objection to these instructions. On this appeal, however, the state vigorously argues that voluntary intoxication is not a defense to the crime of escape. Appellant, on the other hand, argues that this defense was available to him and that the trial judge erred in excluding the testimony of defendant's expert witness on the subject. In view of the fact that we have found appellant to be entitled to a new trial, we deem it necessary to address the state's position and appellant's claim of error.
Many years ago our supreme court adopted the rule that whenever a specific or particular intent is an essential or constituent element of a criminal offense, intoxication, though voluntary, becomes a matter for consideration, or is relevant evidence, with reference to the capacity or ability of the accused to form or entertain the particular intent. Garner v. State, 28 Fla. 113, 9 So. 835 (1891). The supreme court has recognized the continuing viability of that rule. Cirack v. State, 201 So.2d 706 (Fla. 1967).
*26 In Lewis v. State, 318 So.2d 529 (Fla. 2d DCA 1975), this court held that a particular intent, the intent to avoid lawful confinement, is an essential element of the crime of escape. We reversed the action of the trial judge in that case which foreclosed the defendant's attempt to establish that he was forced to leave confinement to avoid possible sexual assault and battery. We observed that, if true, such circumstances would constitute a valid defense insofar as they might establish a lack of wilful intent to avoid lawful confinement or at least create a reasonable doubt that there was one. This court has not had occasion since Lewis to consider whether evidence of voluntary intoxication would likewise constitute a valid defense to the crime of escape.
In reaching our decision in Lewis, we expressed our agreement with the holding of our sister court in Helton v. State, 311 So.2d 381 (Fla. 1st DCA 1975). In that case the court held that an intent to avoid lawful confinement is an essential element of the crime of escape, but went on to say "[w]e do not here find it necessary to decide whether intoxication may be relied upon to prove lack of intent; nor do we decide whether, if intoxication may be relied upon, such intoxication must have been involuntary as distinguished from voluntary." Neither that court nor any other appellate court in Florida has decided this question.
On balance, we see no reason why the crime of escape should not come within the purview of the rule expressed by the supreme court in Garner v. State, supra. We note that the court in Helton followed the reasoning of the court in United States v. Nix, 501 F.2d 516 (7th Cir.1974) when it elected in favor of the rule that the crime of escape involves a particular intent. The Nix court reasoned further that a defendant could be so intoxicated that he could not form an intent to escape, and attached no significance to the voluntariness of a defendant's action in becoming intoxicated. We agree. Accord, United States v. Spletzer, supra.
We hold that evidence offered to show that a defendant was intoxicated at the time of the alleged escape, though voluntarily so, is relevant and admissible, and requires that the jury be instructed to consider whether the defendant was so intoxicated that he could not form the particular intent to escape; i.e., the intent to avoid lawful confinement. For purposes of expressing this general rule, we see no reason to distinguish between intoxication from alcohol and intoxication from drugs. Annot., 73 A.L.R.2d 98, § 3 (1976).
This brings us to the final point; that is, whether the trial judge erred in excluding the proffered testimony of Dr. Walter Afield, an admittedly qualified expert in the field of psychiatry with substantial clinical experience regarding LSD. Dr. Afield's testimony was proffered by the defense in support of appellant's argument that he was under the influence of LSD at the time he left prison. Appellant asserts that Dr. Afield's testimony was so important to his case that its erroneous exclusion could not be considered harmless error. He cites this court's decision in Godorov v. State, 365 So.2d 423 (Fla. 2d DCA 1978) as establishing the rule that when a defense witness is precluded from testifying as to a matter which is the heart of the defendant's case, such error is harmful. We agree with appellant that the trial judge committed reversible error in refusing to allow Dr. Afield's testimony in this case.
The state clearly established a prima facie case against appellant by showing that he was discovered to be missing about 2:30 p.m. on the day in question and was apprehended outside the prison walking along a road in a direction that would take him away from the prison. Prison officials who apprehended appellant testified that he made no effort to run away, was compliant and cooperative, and in fact said nothing at all when he was arrested. These witnesses further testified that appellant did not seem to be nervous or excited, appeared to understand what was being said to him, and did not appear to be under the influence of alcoholic beverages or drugs. They admitted, however, that the defendant was on an open road and that there were woods and houses on each side of the road among which he could have tried to hide.
*27 James Lavely, a resident of the area who lived about a half mile from the prison, testified that about 2:30 p.m. on the date of the alleged escape, he was home watching television when the back door opened and appellant walked in. He said that appellant said he wanted a drink of water and asked if he could sit down and rest for awhile. This witness further stated that he and appellant then carried on a normal conversation for about thirty minutes. At one point, he said, appellant acted somewhat strangely, appearing to be "thinking in the distance or something."
Mr. Lavely further testified that appellant seemed to be in no big hurry but that he seemed to understand what he was saying and did not appear to be under the influence of drugs or alcoholic beverages. He asked for clothes, although he had apparently walked under a clothesline full of clothes in the back yard. Mr. Lavely's son arrived home while appellant was there and gave him some clothes. The son testified that appellant changed clothes and walked out the back door. The son also testified that appellant seemed to understand at all times what he was saying.
At the conclusion of the state's case, the defense called Hariel Joyner as its first witness. Joyner was appellant's fellow inmate at the Zephyrhills Correctional Institution and said that on the morning of the alleged escape, at about 8:30 a.m., he and appellant were behind one of the dormitories smoking marijuana and drinking "buck." Joyner explained that buck is a homemade wine made by inmates of the Zephyrhills facility.
Joyner testified that while he and appellant were behind the dormitory, appellant took out a birthday card that he said he had received a few days before. Joyner stated that the card was lined with a transparent plastic panel and that inside the plastic lining were five hits of windowpane acid. He explained that each "hit" is a little piece of square transparent material containing LSD that melts down when placed in the mouth. He stated that even one hit is sufficient to get four people high. He indicated that this type of LSD is commonly called "windowpane acid" because it can be secreted behind the transparent lining of a postcard.
Joyner further testified that appellant asked him if he wanted one of the hits of LSD, and Joyner said that he did. Joyner then reached down and picked one of these transparent squares out of the appellant's hand. He testified that the remaining four hits looked exactly the same as the one he took. He ate that one and watched as appellant ate the remaining four squares.
Joyner further testified that after about 30 or 45 minutes, he began to see different colors and things began to move around. He said that he and the appellant compared notes as to the symptoms they were experiencing and appellant related similar symptoms. He stated that appellant was "laughing and carrying on" and said he was high. Joyner testified that he had used LSD numerous times in the past, and that he was sure the substance he consumed was LSD.
Following Joyner's testimony, the defense proffered the testimony of Dr. Afield. Appellant's attorney asked Dr. Afield a hypothetical question which described conduct such as appellant's conduct at the Lavely residence and his conduct when apprehended, and recited that the hypothetical person had taken four squares of LSD. Based on that question, Dr. Afield said he could testify that the conduct of the person in the hypothetical question was consistent with the reaction of someone who was undergoing LSD induced psychosis, and that he was sure of this within reasonable scientific certainty.
In response to a question by the trial judge, Dr. Afield admitted that he could not render this opinion absent the history that the person had taken LSD. He explained that had the person acted in a very bizarre fashion, it could be said that he was psychotic without regard to his history; however, since the person's behavior was not that bizarre, the history was crucial. The trial judge ruled that he would not permit Dr. Afield to testify because there was not sufficient evidence in the record to show that appellant took LSD.
*28 We believe the trial judge was in error. It is not necessary that a hypothetical question be limited to those facts which are directly established by the evidence. Such a question can be based on an assumed state of facts which the evidence in the record tends to prove, even by inference. Annot., 56 A.L.R.3d 300, § 8 (1974). We believe Joyner's testimony was sufficient to support a rational inference that appellant ingested four hits of LSD around 8:30 a.m. on the day of the alleged escape. The trial judge implicitly recognized this fact when he instructed the jury that appellant's voluntary drug intoxication could be considered by them in determining whether appellant's requisite intent to avoid unlawful confinement had been established.
Clearly, Dr. Afield's testimony was crucial to the defense. While the effects of alcohol may be commonly known, the assistance of an expert would ordinarily be necessary for a jury to understand the effects of LSD. We hold that Dr. Afield's testimony was relevant and proper and should not have been excluded. Accord, Cirack v. State, supra.
Reversed and remanded for further proceedings not inconsistent with this opinion.
GRIMES, C.J., and RYDER, J., concur.
NOTES
[1] The trial judge further instructed the jury, and properly so, that drunkenness or impairment of the mental faculties by the use of narcotics or other drugs arising after the formation of the intent which is an essential element of a crime and voluntarily induced for the purpose of nerving the offender to commit a crime already planned does not excuse or reduce the degree of the crime. This corollary to the basic rule on voluntary intoxication as it relates to intent was expressed by the court in Garner v. State, 28 Fla. 113, 9 So. 835 (1891) and is reflected in Florida Standard Jury Instructions in Criminal Cases Second Edition (The Florida Bar) 2.11(c).