415 So.2d 39 (1982)
Rickey HOLDREN, Appellant,
v.
STATE of Florida, Appellee.
No. 81-908.
District Court of Appeal of Florida, Second District.
April 30, 1982.
Rehearing Denied June 14, 1982.
Jerry Hill, Public Defender, and Michael E. Raiden, Asst. Public Defender, Bartow, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Michael J. Kotler, Asst. Atty. Gen., Tampa, for appellee.
GRIMES, Judge.
In this appeal from his conviction for escape, appellant asserts that the court erroneously refused to permit him to testify that he escaped in order to avoid being homosexually raped.
The state presented evidence that while appellant was an inmate at Largo Correctional Center, he fled from custody during a supervised visit to a shopping center. Four days later he was arrested in Texas for a traffic violation. When the state trooper pulled him over, he tried to change seats with another occupant of the vehicle in order to make it look as if he had not been driving. He told the trooper that he was headed for Amarillo to get a job.
Apparently prompted by defense counsel's opening statement, the state moved to require appellant to make a proffer outside the hearing of the jury on his defense of duress and necessity. On proffer, appellant testified that he had left the facility to avoid the possibility of being raped by another inmate named Fred who was bigger than him. He said that on two previous occasions Fred had made sexual overtures toward him. When asked what he intended to do when he got out, he said that he intended to get a job in Texas and "hold it down as long as possible." He conceded that he had not reported the incidents involving *40 Fred to the authorities. He also admitted that just before he fled one of his supervisors arrested him for stealing some shoes while he was at the shopping center. The court ruled that appellant's testimony was insufficient to be presented to the jury on the question of necessity to escape. Appellant chose not to testify on any other subject, and the jury subsequently convicted him.
Appellant contends that his testimony as it concerned the necessity for his escape was relevant to the issue of intent to escape and that the jury should have been permitted to pass on its credibility. While certain statements in some Florida opinions lend superficial credence to appellant's position, we believe that a careful analysis of the law supports the court's ruling which excluded the proffered testimony.
In Helton v. State, 311 So.2d 381 (Fla. 1st DCA 1975), the defendant endeavored to defend against a charge of escaping from a detention center on Christmas Eve by proffering testimony that the jailer had given vodka to inmates and that he was so intoxicated when he fled that he did not have the requisite intent to escape. The court ruled that "there are two elements to the crime of escape: The physical act of leaving, or not being in, custody coupled with the intent to avoid lawful confinement." 311 So.2d at 384. The court observed that its conclusion was buttressed by those cases which have recognized the "`narrow but time-honored defense of necessity available to a prisoner whose escape has been motivated by sufficiently perilous circumstances.'" Id. at 383. However, the court pointed out that just because a person may not have the requisite intent to escape at the moment he leaves confinement, he can still be convicted of escape if he continues to intentionally remain outside of lawful custody. Thus, the court affirmed the defendant's conviction without passing on whether or not he was drunk when he left the detention center because he remained at large for a month following his escape.
Our court in Lewis v. State, 318 So.2d 529 (Fla. 2d DCA 1975), cert. denied, 334 So.2d 608 (Fla. 1976), relied upon Helton to hold that the trial court should have permitted a defendant to present evidence that he had escaped to avoid the sexual advances of another inmate. The defendant had been apprehended on the roof of the jail, and he contended that he was merely seeking to reach the local circuit judge to report the matter since his detention officers refused to heed his pleas for protection. We ruled that the evidence was admissible insofar as it sought to establish the lack of intent to commit the crime of escape. Later, in Bavero v. State, 347 So.2d 781 (Fla. 1st DCA 1977), our sister court held that a defendant who was a lifelong asthmatic had a right to present testimony that he had escaped in order to get medical help and that when he was captured about ten hours later, he was attempting to bring his problems to the attention of federal authorities. The court observed that his testimony was relevant to the issue of whether he left confinement with intent to elude lawful authority.
Each of the foregoing decisions tended to blur the concepts of intent to escape and the defense of duress and necessity. However, there is actually a distinction between the two. This is well illustrated by the recent decision of the United States Supreme Court in United States v. Bailey, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). In that case the defendants contended that they escaped to avoid oppressive prison conditions. The court of appeals concluded that the trial court should have allowed the jury to consider evidence of the coercive conditions in determining whether the defendants had formed the requisite intent to escape. In reversing, the Supreme Court discussed the difference between the intent to escape and the defense of duress and necessity. The Court noted that the circuit court had erred in holding that an escapee did not act with the requisite intent if he escaped in order to avoid oppressive conditions in prison. The Court held, rather, that the prosecution sustains its burden of proof on intent when it demonstrates that an escapee knew his actions would result in his leaving physical confinement *41 without permission and that if a defendant contends that circumstances within the prison compelled him to leave, he must raise these matters through the defense of duress or necessity. The Court went on to point out that before an escapee is entitled to present evidence to the jury about the conditions in prison which caused him to escape, "he must proffer evidence of a bona fide effort to surrender or return to custody as soon as the claimed duress or necessity had lost its coercive force." 444 U.S. at 415, 100 S.Ct. at 637, 62 L.Ed.2d at 594. Since under the facts of the cases before it the defendants had not surrendered or offered to surrender at their earliest opportunity, the Court held that the evidence directed to the defense of duress and necessity had properly been withheld from jury consideration.
We believe the First District Court of Appeal stated the proper rule concerning the nature of intent to escape and the distinction between intent and the defense of necessity or duress in Watford v. State, 353 So.2d 1263 (Fla. 1st DCA 1978), a case which was decided after both Helton and Bavero. In that case, the court said:
In summary, we declare the general rule to be that when the State has established its right to legal custody and the conscious and intentional act of defendant of leaving the established area of such custody, the offense of escape is prima facie established. In such circumstances, the only viable defense to such a charge that may be available is necessity involving, as to such defendant, reasonable grounds to believe that he is faced with real, imminent and present danger of death, great bodily harm, or such type of danger to his health, if he does not temporarily leave his place of confinement. See Annot., 69 A.L.R.3d 678 (1976).
353 So.2d at 1265. Moreover, we adopt the reasoning of the Supreme Court in United States v. Bailey that in order to present testimony concerning the danger which prompted him to leave, the escapee must proffer evidence of a bona fide attempt to surrender or return to custody as soon as he was no longer under the coercive force of the duress. Hence, we recede from Lewis v. State to the extent that we suggested that evidence concerning duress and necessity bears on the issue of intent. However, we note that the result in Lewis was correct because under its facts the court should have allowed the defendant to present his necessity defense to the jury. Our decision in Fouts v. State, 374 So.2d 22 (Fla. 1979), was also correct because there the question of whether the defendant was suffering from drug intoxication at the time he left confinement properly went to the issue of whether he had the intent to leave the prison without permission and unlike Helton v. State, there was no showing that he continued to remain at large after he was no longer intoxicated.
Applying these principles to the instant case, there is no need for us to decide whether appellant's references to homosexual advances constituted sufficient evidence of an imminent threat because appellant totally failed to show that he endeavored to return to custody. At the time he was apprehended in Texas, it was obvious that he had no intention to voluntarily give himself up to the authorities. Hence, the court properly refused to permit him to testify concerning his defense of duress and necessity.
AFFIRMED.
HOBSON, A.C.J., and CAMPBELL, J., concur.