SHIVERS, Judge.
Michael M. Ramadanovic and Frank W. Pehringer appeal their conviction, after a jury trial, of the offense of attempted escape from lawful confinement in violation of section 944.40, Florida Statutes.
At issue is whether the jury was properly instructed on the charge of escape from lawful confinement. We reverse and remand for a new trial.
Appellants were charged with attempt to escape from lawful confinement on November 18, 1983. On that day Union Correctional Institution (UCI) inmates Ramadano-vic and Pehringer were in the central area of the prison grounds at UCI as part of a work squad. The inmates walked in pairs, with one officer (guard) in front and two officers in back of the line. The twenty inmates, the three armed guards, and a supervisor were on their way to cut grass on the prison grounds. Shortly after they left the residential area and were walking along a road within the grounds, Ramada-novic and Pehringer left the column and ran toward the UCI training complex. They were then about a mile from the boundary of the prison grounds.
One of the officers, Bobby Lee Williams, testified that while he was leading the work squad he heard Sergeant Tucker shout, “Halt, halt,” and then he heard a shot. As he turned around, he heard another shot and saw Ramadanovic and Peh-ringer running across the road. Williams fired a warning shot, but the inmates kept running. He shot at Pehringer who jerked back and fell. The officer next fired at Ramadanovic who also fell. Officer Williams went over to guard Ramadanovic. Pehringer broke loose, jumped the fence and ran out in the field. Williams pursued him, firing one warning shot. Pehringer hit the ground and when Williams fired a second shot, Pehringer surrendered.
On cross-examination of Officer Williams, it was brought out that on Officer Williams’ deposition he had stated that he heard the shot and then the words, “Halt, halt.”
Sgt. Tucker testified the appellants ran out of the line in the direction of the CTI building. Tucker hollered “Halt” twice. He heard shots fired, but the inmates kept running until Ramadanovic was hit. Peh-ringer continued running between the buildings. He did not see Pehringer captured.
Officers Joseph Jowers and Wendell Brown also accompanied the work squad that morning when Ramadanovic and Peh-ringer ran from the line toward the UCI training complex. Brown stated he fired a warning shot after telling them to halt first.
Ramadanovic did not testify. Pehringer testified they left the line to pick up a marijuana “drop,” something he said they had done before. He stated he had previously picked up marijuana without a hitch, although three days before, on November 15, 1983, Officer Williams found the drop before appellant could get it. Since they were walking in pairs, the plan was to have both people in line run across the road so that the rear guard would not just see one person in line when they came back into view. He declared that they intended to dart back into line, but that a guard began shooting without warning. Pehringer asserted that they ran to avoid the gunshots and never intended to escape.
There was no evidence adduced to show that contraband was found on the road and *114 there was no evidence that the appellants related to the officers why they left the line. Officer Williams stated that his job was to walk before the prisoners to search for contraband. He testified that he had found some several days before (marijuana in an oil can three or four hundred yards from where they were working that morning).
At the charge conference the appellants requested the following special instruction:
It is the theory of the defense that neither Defendant intended to Escape.
If you find from the evidence that the Defendant’s (sic) intentions were to recover contraband from the prison grounds rather than an intention to escape from confinement, you must find the Defendant’s (sic) not guilty.
The appellants’ request was denied. In instructing the jury on the elements of the offense of escape, the trial court did not instruct the jury on the element of intent to avoid lawful confinement. Instead, the court’s instruction was as follows:
The Defendants in this case have been accused of the crime of attempted escape.
Before you can find the Defendant— and when I use the word Defendant, I’m speaking about each Defendant — guilty of attempted escape, the State must prove the following three elements beyond a reasonable doubt:
One, the Defendant was convicted of a crime and sentenced to a term of imprisonment, and committed to the State of Florida, Department of Corrections, by a Court.
Two, while a prisoner, Defendant was confined at Union Correctional Institution.
And three, the Defendant attempted to escape.
Union Correctional Institution is a penal institution.
The information filed against Ramadanovie and Pehringer charged that they:
having been lawfully confined in a prison, jail, road camp, or other penal institution, or working upon the public roads, or being transported to or from such place of confinement, did unlawfully escape or attempt to escape from such confinement, contrary to Section 944.40, Florida Statutes, [emphasis supplied]
Section 944.40 reads:
Any prisoner confined in any prison, jail, road camp, or other penal institution, state, county, or municipal, working upon the public roads, or being transported to or from a place of confinement who escapes or attempts to escape from such confinement shall be guilty of a felony of the second degree_(emphasis supplied).
Florida Standard Jury Instruction on Escape reads:
ESCAPE
F.S. 944.40
Before you can find the defendant guilty of Escape, the State must prove the following three elements beyond a reasonable doubt:
1. (Defendant) was [under arrest and in the lawful custody of a law enforcement official.] [convicted of a crime and sentenced to a term of imprisonment and committed to (institution alleged) by a court.] Elements
2. While a prisoner, (defendant) was [confined at (name institution).] [being transported to or from a place of confinement.] [working on a public road.] Give 2a, 2b or 2c as applicable
3. (Defendant) escaped or attempted to escape by (read from charge), intending to avoid lawful confinement. (emphasis supplied)
Immediately upon the jury’s withdrawal the trial court asked counsel if he had overlooked any instructions that he had advised he would give. Defense counsel objected to the judge’s failure to advise the jurors that they must find the defendants *115 specifically intended to escape at the time of their departure from the line. Then defense counsel told the judge that he had thought the court was going to give the standard instruction. The court then advised counsel that [what he had given] was the standard on escape.
Since the appellants were charged with attempt to escape from lawful confinement contrary to section 944.40, Florida Statutes, it was essential that the jury be completely instructed on that statutory violation. The instruction given by the trial court omitted the last line of the standard instruction “intending to avoid lawful confinement.”
In Helton v. State, 311 So.2d 381 (Fla. 1st DCA 1975) defendant was charged with escape as defined by section 944.40, Florida Statutes, which read the same then as it does now and as it did on November 18, 1983. Our court declared then:
We therefore hold that there are two elements to the crime of escape: The physical act of leaving, or not being in, custody coupled with the intent to avoid lawful confinement.
Judge Boyer wrote, for the court:
... We look ... to justice and fairness, and on that foundation conclude that the crime of escape necessarily entails as an essential element thereof the intent to escape as well as the act of leaving, or being absent from, lawful custody....
Assume the case of a prisoner, X, who, as a member of a road gang, falls asleep under a shady oak tree during a rest break and is left behind by a negligent guard. Upon waking up, X realizes what has happened and dutifully sets forth upon the highway in an effort to return to his place of imprisonment. In the meantime, however, the authorities have discovered X’s absence and have begun searching for him. Under these circumstances if intent is not a necessary element of the crime, X could be convicted of escape. As another example, assume that while X is being returned to his place of confinement the vehicle in which he is being transported is involved in an accident and the driver is severely injured. Is X to be convicted of escape if he leaves the scene in search of help? We think not.
In the case sub judice we understand the trial court’s refusal to give the appellants’ special instruction as requested. The facts in Helton demonstrated, and we held, that “[e]ven though a defendant may not possess the necessary mental element [of intent] at the time he leaves confinement or custody, he may subsequently do so and thereby render himself criminally liable.” The trial court, though, should have given the standard jury instruction on escape, as defense counsel had understood it would and as the trial court had intended to do. It is necessary that the jury be fully instructed as to both elements of the crime of escape.
We conclude that the inadvertent omission was of such a nature as to lead to confusion in the jurors’ minds (see Railway Express Agency, Inc. v. Fulmer, 227 So.2d 870 (Fla.1969)) and reverse and remand for a new trial.
REVERSED and REMANDED.
WENTWORTH and WIGGINTON, JJ., concur.