394 So.2d 180 (1981)
Bob GRAHAM, Individually and in His Official Capacity As Governor of the State of Florida; and Louie L. Wainwright, Individually and in His Official Capacity As Secretary of Florida Department of Corrections, Appellants,
v.
James VANN, Larry Anderson, Harry Mungin, Charles Green, Willie Middleton, James Sparks, William Hill, Phillip Elliott and Floyd Price, Appellees.
No. XX-474.
District Court of Appeal of Florida, First District.
February 13, 1981.
Jim Smith, Atty. Gen., Kent A. Zaiser, Asst. Atty. Gen., Tallahassee, for appellants.
*181 Alan R. Parlapiano, Public Defender, Jack J. Fine, Asst. Public Defender, Gainesville, for appellees.
PER CURIAM.
This cause is before us on an interlocutory appeal from a peremptory writ of mandamus. The appellees are inmates at Florida State Prison at Starke, Florida, who contend that they have been, and are being, denied certain fundamental constitutional rights as the result of inadequate security measures, inadequate staff training, insufficient number of staff members, overcrowded conditions and physical plant deficiencies.
On May 29, 1980, the inmates petitioned for a writ of habeas corpus. The trial court issued an order directing the appellants to appear and show cause why the writ should not be issued and an evidentiary hearing should not be held. The appellants appeared at a June 5, 1980 hearing at which time they filed a motion to dismiss and/or response to petition for writ of habeas corpus. The hearing resulted in a denial of their motion and a finding that habeas corpus was not a viable remedy. The court found, however, that probable cause existed for the issuance of a peremptory writ of mandamus and entered an order directing the appellants to show cause why such a writ should not issue. On August 20, 1980, the appellants appeared before the court, but declined to present any direct evidence or testimony in response to the show cause order. The judge appointed an Advisory Commission to explore, investigate, define, evaluate, and recommend alternative approaches to the problem. On October 3, 1980, the appellants filed their response to the report of the Advisory Commission. The judge found the response inadequate and ordered the appellants to reduce the inmate population to not more than 750 prisoners on or before 10 days from the order; to file within 11 days of the order a report in which the names, offenses, Department of Corrections numbers and new locations of the transferred inmates were listed; to submit a plan for implementation of the recommendations of the Advisory Commission to the court within 30 days, and to seek accreditation of the prison by the American Corrections Association.
In their appeal from the order, the appellants present the following four points for our consideration: whether there is competent substantial evidence to support a finding that the constitutional rights of the appellees are being denied by the appellants; whether the trial court erred in treating this cause as a class action; whether the trial court erred in granting relief by way of mandamus; and whether the trial court erred in granting the relief ordered without considering the possibility and effect of compliance.
The record overwhelmingly supports the finding that an emergency situation continues to exist at Florida State Prison resulting in a denial of the appellees' constitutional rights, necessitating the need for corrective action.
The appellants apparently concede that the original petition seeks relief for the appellees only and is inoffensive. They argue, however, that the metamorphosis to class action results from the judge's order requiring prison inmate reduction. We disagree. Reduction of the prison population would appear to be one viable remedy available to the judge to correct an unconstitutional situation that the Department of Corrections appears to be unable or unwilling to redress. The following excerpt from the record sheds light on the frustrations encountered by the judge and convinces us that there is no merit to the assertion that the court is insensitive to the possibility and effects of compliance with its order and has overreacted:
I don't believe there are many within the sound of my voice that would disagree with the general statement that the Department has returned, but the balance of the response to that goes on.
"The suggestion that staff be transferred to Florida State Prison from other facilities is not a realistic solution. The solution which underwrites mandatory transfer of experienced staff to Florida *182 State Prison would ignore current literature and experience in the management area."
The response of the Department is in the court file and it is a multi-paragraph response to each of the findings, shortterm and long-term recommendations. Essentially, some are agreed to with the "imminent change of certain conditions." Others are referred to as being up to the Legislature and beyond the Department's control.
The Department has indicated they will seek additional twenty-two, I believe, Correctional Officer II slots, some of which, I assume, would be lateral transfers of Correctional Officers I presently and others might be new.
The bottom line of this response is  appears to me to be business as usual by the State of Florida.
On the Clerk's desk in front of me are two rather large stacks of documents. Those are copies of the incident reports of violence within the past two years at Florida State Prison at Starke. The homicide rate at Florida State Prison at Starke has approached one death every other month since the first of the year. Indeed, if memory serves, there was a murder there on Monday after the advisory commission reported. The stabbing incidents there continue and I give the staff at the Florida State Prison at Starke credit for doing everything they are able to do to deal with the problem. The staff of Florida State Prison at Starke, for reasons set out in the commission report and others, I think are simply unable to deal with the problem as it must be dealt with.
I have great confidence in the report of the commission. The vitae attached to the report indicate that this commission is one of persons with qualifications in the corrections area that should know what they're talking about. In essence that commission said these are the things wrong and this is what is needed to correct it and they said if we can't do these things to correct it, then an immediate reduction in population is the alternative.
Now, the Department says four hundred or four hundred and fifty people moved from the Florida State Prison would exacerbate the problems elsewhere. No doubt that's true.
In addition, I am advised that the Legislature will be in special session in the next month and I presume it's within the purview of the Respondents in this case to make such requests of the Florida Legislature to deal with the problem that Respondents feel is consistent with the needs shown.
The people have paid or will be paying roughly sixteen thousand four hundred and six dollars for the report of the special advisory commission, consultants' fees, costs of transcripts, court reporter fees and transcripts. That is entirely too much to spend not to heed recommendations made by that commission.
Accordingly, this Court finds that the violent conditions previously found to exist at Florida State Prison at Starke continue to exist. This Court finds the response of the Respondents filed in this cause inadequate. In order to deal with the continued loss of life at the Florida State Prison together with the continuing assaults on prisoners and custodial officers by inmates, does find that an emergency continues to exist.
In their challenge to the peremptory writ of mandamus the appellants correctly point out that mandamus is an extraordinary remedy based on equitable principles which will issue only upon a showing of a clear legal right in the petitioners to the performance of a legal duty or ministerial act. The writ cannot be used to compel a public agency clothed with discretion to exercise that discretion in a given manner. Evans v. St. Regis Paper Co., 287 So.2d 296 (Fla. 1974); Hunter v. Solomon, 75 So.2d 803 (Fla. 1954). It is argued that the appellees have not demonstrated that they are entitled to any legal right which the appellants are denying them. In light of the judge's findings, which we have determined are supported by the record, this position is *183 untenable. Louie L. Wainwright as Secretary of the Department of Corrections is charged with supervising and directing the promulgation of Department rules that effectuate the legislative purpose. That purpose is spelled out in the Florida Statutes (1979) as follows:
20.315 Department of Corrections.  There is created a Department of Corrections.
(1) PURPOSE.  The purpose of the Department of Corrections is to integrate the delivery of all offender rehabilitation and incarceration services that are deemed necessary for the rehabilitation of offenders and protection of society. The goals of the department shall be:
(a) To protect society by providing incarceration as an appropriate deterrent to the commission of crime.
(b) To protect society by substituting for retributive punishment methods of training and treatment which correct and rehabilitate offenders who violate laws.
(c) To provide an environment for incarcerated persons in which rehabilitation is possible. This should include the protection of the offender from victimization within the institution and the development of a system of due process and internal legality in institutions.
(d) To provide meaningful community supervision for offenders on parole and probation and to develop community alternatives to traditional incarceration which could be safely used.
(e) To provide rehabilitative programs, which may include both academic and vocational education, to incarcerated offenders and offenders being supervised in the community.
(f) To provide judges with effective evaluative tools and information for use in the sentencing decision.
(g) To provide the necessary level of security in institutions.
The appellees have a clear legal right to be confined in an institution where they are free from victimization by other inmates. The Department of Corrections has an equally clear legal duty to provide the appellees with such incarceration. Mandamus will issue to compel the performance of that duty. Moore v. Florida Parole & Probation Commission, 289 So.2d 719 (Fla. 1974); Battis v. Florida Parole & Probation Commission, 386 So.2d 295 (Fla. 1st DCA 1980). We do not view the trial order as an attempt to direct the appellants to exercise discretion in a circumscribed manner, but rather an attempt to compel the Department of Corrections to comply with constitutional requirements.
The order is accordingly affirmed.
SHIVERS, SHAW and THOMPSON, JJ., concur.