407 So.2d 922 (1981)
STATE of Florida, Appellant,
v.
Daniel M. ALCANTARO, et al., Appellees.
No. AC-182.
District Court of Appeal of Florida, First District.
November 23, 1981.
*923 Jim Smith, Atty. Gen., Lawrence A. Kaden, Asst. Atty. Gen., for appellant.
Michael E. Allen, Public Defender, Nancy A. Daniels, Asst. Public Defender, for appellees.
MILLS, Judge.
The State appeals the trial court's dismissal of escape charges against appellees. We reverse.
This case is a consolidated appeal of four cases involving eleven inmates incarcerated at Florida State Prison in Bradford County, Florida. The inmates were charged with escape on various specific dates from 29 May 1980 through 27 September 1980, contrary to Section 944.40, Florida Statutes (1979). The inmates filed various motions to dismiss with two common allegations: (1) the inmates lacked criminal intent to escape, and (2) the State would not be able to prove the inmates were in lawful confinement at the time of their escape because the intolerable prison conditions at Florida State Prison amounted to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 17 of the Florida Constitution. The inmates urged that the trial court's prior but unrelated ruling, affirmed by this court in Graham v. Vann, 394 So.2d 180 (Fla. 1st DCA 1981), which held that the prison conditions at Florida State Prison amounted to cruel and unusual punishment and ordered an immediate prison inmate population reduction, mandated dismissal of the charges.
The trial court, relying on Vann, supra, dismissed the escape charges and stated at the hearing on the motions to dismiss, "I'm going to find it as a matter of law  a finding, as a matter of law, that the incarceration was cruel and unusual punishment, rather than having a jury find that to be the case as the defense to the crime of escape." Additionally, the trial court's order stated:
So then, in the instant cases, the state has charged that the defendants "left" lawful confinement, for which the state seeks the sanction of an adjudication of guilt and the imposition of additional, as opposed to continued, incarceration.
May the state allege lawful confinement in these cases?  surely; can the state prove it as a matter of law?  just as surely not.
We hold, however, the trial court incorrectly attempted to expand what has been recognized as a limited factual defense to the crime of escape, "the narrow but time-honored defense of necessity available to a prisoner whose escape has been motivated by sufficiently perilous circumstances," Helton v. State, 311 So.2d 381 (Fla. 1st DCA 1975), into a general legal defense by allowing defendants to allege the unconstitutionality of prison conditions in general without showing how these prison conditions specifically necessitated the defendants' escape.
At common law, the defense of duress or necessity was available to the charge of escape but only in very limited factual situations. "Inevitably, severe limitations were affixed to this defense and the general rule evolved that intolerable living conditions in prison afforded no justification for escape." People v. Lovercamp, 118 Cal. Rptr. 110, 43 Cal. App.3d 823 (1974). See also People v. McKnight, 626 P.2d 678 (Colo. 1981); State v. Cross, 58 Ohio St.2d 482, 391 N.E.2d 319 (1979); and State v. Alberigo, 109 Ariz. 294, 508 P.2d 1156 (1973).
This general rule, however, has been relaxed somewhat over the years in recognition of the reality of life inside penal institutions. The defense of duress or necessity has now been recognized in cases involving lack of appropriate medical attention, Bavero v. State, 347 So.2d 781 (Fla. 1st DCA 1977); threats of sexual assaults, People v. Lovercamp, supra; Lewis v. State, 318 So.2d 529 (Fla. 2d DCA 1975); People v. Unger, 362 N.E.2d 319 (Ill. 1977); and threats of correctional officer abuse, Esquibel *924 v. State, 91 N.M. 498, 576 P.2d 1129 (1978). These cases recognizing the defense of duress or necessity contain one common thread: the defendant's conduct was necessitated by a specific and imminent threat of injury to his person under circumstances which left him no reasonable alternative other than to escape. The specific and imminent threat was personal to the defendant and was not a general allegation that the conditions of incarceration were intolerable. See generally Annot. 69 A.L.R.3d 678 (1976).
The appellees have failed to cite any authority for the proposition that intolerable prison conditions in general will support an inmate's request for an instruction on necessity and we have found none in independent research. We, therefore, decline to so hold. We join the majority of other states which hold that an inmate must put forth evidence of a real, imminent danger of death or great bodily harm, specific to himself, rather than the inmate population in general, before he may claim the defense of necessity. As will be seen in the following discussion, prior case law has also imposed other prerequisites which must be shown in order to claim the defense of necessity or duress.
In Florida, there are two elements to the crime of escape: the physical act of leaving or not being in custody, and the intent to avoid lawful custody. Helton v. State, supra. Intent may be proven by circumstantial evidence. Helton escaped from county jail with other inmates on Christmas Eve. He argued he lacked the requisite intent to escape because he was intoxicated. Without deciding whether intoxication could vitiate the intent requirement, this court held Helton showed the requisite intent to avoid lawful custody by remaining at large for one month and specifically not returning for two weeks after promising by phone to surrender.
As to the requirement of being in lawful custody, the Second District Court of Appeal in State v. Fulkerson, 300 So.2d 276 (Fla. 2d DCA 1974) held, "where one is imprisoned under some color of law, he is not entitled to resort to self help [escape] but must apply for his release through regular legal channels. The possibility of violence incident to a prison break dictates strongly against any other rule." (Emphasis supplied). Fulkerson was held beyond the statutory maximum of 30 days for holding an out-of-state fugitive. Sixty-five days after his original arrest he was arrested pursuant to a governor's warrant and he escaped several days later. He argued that he was not in lawful custody since the state had no right to retain him longer than the 30-day statutory period.
In Lewis v. State, 318 So.2d 529 (Fla. 2d DCA 1975), the defendant alleged he was forced to leave custody because of specific threats of sexual assault from his cellmate. He contended that his prior complaints to the prison authorities went unheeded and he was returned to the same cell with his former cellmate. He argued he was trying to report these matters to the circuit judge when he left confinement and also that he lacked the intent to escape because he did not leave the compound but merely climbed the radio antenna. The other inmate he left with successfully escaped. The court held that if Lewis' allegations were true "this could have been a valid defense insofar as it might establish a lack of willful intent to avoid lawful confinement or at least create a reasonable doubt that there was one."
Medical necessity was recognized as an arguable defense by this court in Bavero v. State, 347 So.2d 781 (Fla. 1st DCA 1977). Bavero, a lifelong asthmatic, had been reassigned from a medical grade 3 (light duty) classification at Avon Park Institution to a medical grade 1 (physically fit for any manual labor) at Gainesville Road Camp, a hard labor work camp. Upon stating one morning that his asthma prevented him from completing his work duties, he was placed in "the box" for 2 1/2 hours as punishment and later told he would work like everyone else or be put in the box and forgotten.
Bavero was given a spray mist inhaler for his condition but warned not to use it more than six times a day since overuse could *925 cause cardiac arrest. In order to perform his duties Bavero was forced to use the inhaler two to four times per hour. Bavero made several other attempts to make his condition known to the prison administration but he was not successful. He escaped and argued he was seeking to bring his problem to the attention of the federal authorities in Jacksonville. This court held the proffered testimony regarding his alleged medical necessity should have been allowed to go to a jury on the question of whether he left confinement with the intent to avoid lawful custody:
[A]nd if the jury finds ... that appellant had reasonable grounds to believe that there was a real, imminent and impending danger to him of death or serious bodily harm if he did not leave the place from which he was confined and that he left because of such danger rather than with the intent to elude lawful authority, the jury should find him not guilty of the crime of escape.
Bavero, supra.
Likewise, in Watford v. State, 353 So.2d 1263 (Fla. 1st DCA 1978), we held:
In summary, we declare the general rule to be that when the State has established its right to legal custody and the conscious and intentional act of defendant of leaving the established area of such custody, the offense of escape is prima facie established. In such circumstances, the only viable defense to such a charge that may be available is necessity involving, as to such defendant, reasonable grounds to believe that he is faced with a real, imminent and present danger of death, great bodily harm, or such type of danger to his health, if he does not temporarily leave his place of confinement. See Annot., 69 A.L.R.3d 678 (1976). (Emphasis supplied).
Following the reasoning in the above cited cases, we specifically adopt the conditions which must be shown prior to an instruction on necessity or duress as enunciated in People v. Lovercamp, 118 Cal. Rptr. 110, 43 Cal. App.3d 823 (1974). In Lovercamp, the court held that a limited defense of necessity is available if the following conditions exist:
(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;
(2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory;
(3) There is no time or opportunity to resort to the courts;
(4) There is no evidence of force or violence used towards prison personnel or other "innocent" persons in the escape; and
(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.
In Lovercamp, an instruction on the defense of necessity was allowed to two female inmates who escaped to avoid a specific threat of forcible sexual attack by a group of lesbians. As noted in Lovercamp, simply alleging an escape to avoid homosexual attack will not suffice to prevent a conviction. Likewise, in this case, simply alleging that the general prison conditions are violent and brutal amounting to cruel and unusual punishment will not suffice to prevent a conviction for escape.
The last Lovercamp criteria, regarding an inmate reporting to the proper authorities when he or she has attained a position of safety, is supported by the United States Supreme Court's ruling pertaining to the availability of the defense of necessity or duress to a charge of escape from a federal institution:
[I]n order to be entitled to an instruction on duress or necessity as a defense to the crime charged, an escapee must first offer evidence justifying his continued absence from custody as well as his initial departure [footnote omitted] and that an indispensable element of such an offer is testimony of a bona fide effort to surrender or return to custody as soon as the claimed duress or necessity has lost its coercive force.
*926 United States v. Bailey, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).
We find the trial court's ruling that the State cannot prove its right to lawful custody because of the ruling in Vann, supra, untenable. A finding that prison conditions violate the United States and Florida Constitutions does not negate the state's right to legal custody of the inmates. It does, however, as the trial court correctly ruled in Vann, permit the imposition of sanctions, including ordering an immediate inmate population reduction, to mandate compliance with constitutional requirements. Under the trial court's theory, a ruling such as Vann would give the inmates the opportunity to escape for whatever reason and then raise the finding that the prison conditions did not meet constitutional muster as an absolute defense to the charge. Such a ruling could result in total anarchy in the penal system by encouraging prisoners to escape with the hope of raising general prison conditions as a defense.
Redress for correction of general prison conditions is to be had through traditional legal channels pursuant to the United States and Florida Constitutions as was done in Vann, supra. Every trial for escape is not to be turned into a hearing on the current state of the Florida penal system. See United States v. Bailey, supra. Prisoners are not entitled to invoke the defense of necessity or duress to a charge of escape by introducing evidence as to the general conditions of confinement without first complying with the specific criteria outlined above.
Accordingly, the trial court's order is REVERSED and REMANDED for proceedings consistent with this opinion.
ROBERT P. SMITH, Jr., C.J., and McCORD, J., concur.