435 So.2d 854 (1983)
Howard McGEE, Appellant,
v.
STATE of Florida, Appellee.
No. AM-388.
District Court of Appeal of Florida, First District.
June 7, 1983.
On Rehearing July 29, 1983.
*855 Michael Allen, Public Defender, Glenna Joyce Reeves, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Kathryn L. Sands, Asst. Atty. Gen., Jacksonville, for appellee.
LARRY G. SMITH, Judge.
Appellant seeks reversal of a judgment of conviction entered upon a jury verdict finding him guilty of the offense of escape, for which he has been sentenced to an enhanced term of thirty years, to run consecutively to sentences imposed under convictions for two separate crimes. Appellant argues several grounds for reversal, including double jeopardy, rulings of the trial court allegedly improperly restricting appellant in his presentation of evidence in his defense, failure to restrict the State in its presentation of prejudicial evidence, and other trial errors. We affirm.
On October 8, 1981, capiases were issued by the Circuit Court of Duval County for the arrest of appellant in connection with some thirteen felony charges pending in seven separate criminal cases. The capiases, seven in number, identified the underlying offenses which included burglary, burglary of a conveyance, forgery, uttering a forged instrument, and robbery, and each of the seven capiases also noted "bond estreature" as cause for appellant's arrest. On November 24, 1981, appellant was arrested on each of the capiases, taken into custody and incarcerated in the Duval County Jail by Duval County Sheriff's Deputies.
On December 2, 1981, appellant was taken before a county judge in the Duval County Courthouse, in Courtroom 21, for a first appearance in connection with his arrest on the capiases. Upon being advised by appellant that his private counsel was not present, and did not know appellant was to be in court that day, the court instructed a bailiff to escort appellant to a telephone for the purpose of calling his attorney. Appellant apparently completed the call, then was returned to the courtroom where he was again seated to await further proceedings. Shortly thereafter, appellant jumped up, ran across the courtroom floor at a high rate of speed, knocked over the speaker's podium, bumped into one of the assistant public defenders, and continued at a high rate of speed down the hallway outside the courtroom. He was pursued by bailiffs from the courtroom  one of them shouting warnings to stop, and threatening to shoot  and was intercepted by another officer in front of the elevator, where a struggle ensued until appellant was finally subdued and returned to the courtroom. The presiding judge from whose courtroom appellant had escaped proceeded to immediately adjudge appellant in contempt of court, stating:
Immediately, right after he [the bailiff] let you call your lawyer, you was [sic] *856 placed back there and then you tried to escape from this courtroom, disrupt the court, disrupted everything and you ran over a podium over there where the Public Defender was standing, just about bruised her up a little bit. So, I am going to sentence you to contempt of court for five months and 29 days in the County Jail for disrupting this court, ... .

I.
Appellant first contends that his direct criminal contempt conviction bars a subsequent prosecution for escape, urging that his right to protection against double jeopardy prohibits him from being twice convicted for the same conduct. Arguing that the "Blockburger test," Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), has been expanded, Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), appellant urges that the contempt and the escape are the "same" offense for double jeopardy purposes. We disagree. In State v. Carpenter, 417 So.2d 986 (Fla. 1982), the court had occasion to address the double jeopardy issue, noting that if the crimes are the same, the imposition of multiple punishments is prohibited under Blockburger, supra. Further, the court stated (Id. at 987):
A single transaction can give rise to distinct offenses under separate statutes without violating the double jeopardy clause of the fifth amendment. Albernaz v. United States, 450 U.S. 333 [101 S.Ct. 1137, 67 L.Ed.2d 275], ... (1981). In determining whether separate punishment can be imposed, Blockburger requires that courts examine the offenses to ascertain whether each offense requires proof of a fact which the other does not. If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. See Iannelli v. United States, 420 U.S. 770 [95 S.Ct. 1284, 43 L.Ed.2d 616], ... (1975). In Albernaz v. United States, the Court recognized that the power to define criminal offenses and to prescribe punishments to be imposed upon those found guilty of them rests wholly with the legislative branch.
The claim of double jeopardy here, whether under the traditional Blockburger test or a more expansive version argued by appellant, will not withstand the most simple analysis, for it is evident that appellant's conduct in knocking over a podium, bumping into an assistant public defender and disrupting a court proceeding amply supports a conviction for direct criminal contempt, but is immaterial to the offense of escape. Further, appellant's departure from the courtroom and his footrace down the exterior corridor until he was forcibly intercepted and restrained by law enforcement officers near the elevator, essentially establishes the escape charge (once lawful custody is established), but does not establish a direct contempt of court for courtroom disruption. In terms of "elements" of the two offenses, lawful custody is not an element of direct criminal contempt, and courtroom disruption or other interference with a judicial proceeding is not an element of escape. We think it is clear from the record of the contempt proceeding that the court found appellant in contempt "for disrupting this court," rather than because appellant escaped or attempted to escape from lawful custody. We also reject appellant's contention that subjecting appellant to the contempt and the escape charges constitutes "cruel harassment" in violation of the due process clause of the Fifth Amendment.

II.
At the commencement of the trial on April 8, 1982, appellant's counsel filed a motion to dismiss, contending that appellant was not in lawful custody on December 2, 1981, the date of his attempted escape, because the capiases upon which he was being held were improperly issued by the trial court. The written motion to dismiss alleges that the capiases were issued following *857 appellant's failure to appear for a pretrial conference on certain of the felony charges pending against him, even though a waiver of appearance had been filed in appellant's behalf in each of the cases in which a capias was issued. He contended in the trial court, and here, that since the defendant had validly waived his appearance at the pretrial conference scheduled for October 8, 1981, the capiases issued on that date following appellant's nonappearance in court were issued illegally and without cause. Appellant's counsel argued, based upon his recollection, that on the day preceding October 8, 1981, the court had ordered him to have appellant present in court on October 8, and upon appellant's failure to appear, the capiases were issued for his arrest. The court responded, and appellant's counsel agreed, that the court had also set the cases for trial, and upon appellant's nonappearance for trial he had estreated his appearance bonds. The record does not disclose the date of the bond estreatures. However, as indicated above, all of the capiases cited "bond estreature" as one of the reasons for appellant to be taken into custody. The prosecuting attorney also argued that on the date of the alleged escape appellant was in custody on numerous cases, in addition to those involving issuance of the capiases, but that the state had elected to use the capiases to prove "lawful custody" because of the presumption of lawfulness arising from arrest on the capiases. The trial judge, being the same judge who had issued the capiases upon which appellant was arrested, denied an evidentiary hearing to establish further details bearing upon the correctness of the judge's action in ordering the issuance of the capiases as being "unnecessary."
It is clear that defense counsel's theory of defense was not that Judge Oakley (the presiding judge in this proceeding) did not issue the several capiases for appellant's arrest and detention, nor that the judge lacked general authority to issue capiases for the recommitment of defendants at liberty on bail for felony offenses for non-appearance or breach of bail bond conditions, nor that the arresting officer and the jail personnel improperly relied upon the authority of the capiases for appellant's arrest and detention, nor that appellant was in fact arrested, incarcerated, and escaped or attempted to escape from courtroom 21 of the Duval County Courthouse while he was in custody of duly authorized law enforcement officials under the authority of the capiases. The defense attempted to be asserted in the motion to dismiss and before the jury was that Judge Oakley did not have "probable cause" to order the issuance of the capiases for appellant's arrest, and, therefore, that appellant's custody, at the time of his escape, was unlawful. Defense counsel proceeded on this tack throughout the trial in his examination of the witnesses and in closing argument, despite the court's pretrial ruling that the existence of probable cause justifying the issuance of the capiases was not an issue in the case. The trial court was correct in this ruling. The issue was not one for the jury. When it was shown by the state's evidence that the appellant was arrested by a duly authorized officer upon the authority of outstanding capiases issued by the Circuit Court of Duval County, regular on their face, and that at the time of his escape appellant was being held by duly authorized officers under the authority of the capiases, the appellant was in "lawful custody" so as to subject appellant to the penalty of the law for the crime of escape.
Appellant's reliance upon Emmanuel v. State, 366 So.2d 513 (Fla. 2nd DCA 1979), is misplaced. A circuit judge's order revoking bail and issuing a warrant for the arrest of the accused, following the failure of the accused to appear at a pre-trial conference, if based upon an erroneous determination of fact or incorrect application of the law, is subject to challenge by motion to quash the warrant and to set aside the bond estreature. Emmanuel, supra. Until properly challenged and set aside, however, the detention of the accused by duly authorized law enforcement officials under the warrant or capias is lawful, as that term applies to the "lawful custody" element of the offense of escape. See Section 944.40, Florida *858 Statutes (1981), proscribing the offense of escape by any "prisoner," and Section 944.02, defining "prisoner" as "any person who is under arrest and in the lawful custody of any law enforcement official, ...," etc.
Proof of "lawful custody" has never been held in this state to require the state, in prosecuting an escape charge, to prove that the trial judge who issued the warrant upon which the accused has been arrested and is being held, correctly determined the existence of "probable cause" for issuance of the warrant. It has been held that where the issue is the admissibility of evidence seized pursuant to an arrest, the absence of probable cause for issuance of the warrant upon which the arrest was effected requires suppression of the evidence. Whiteley v. Warden of Wyoming Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); and see Martin v. State, 424 So.2d 994 (Fla. 2nd DCA 1983) (evidence suppressed where arresting officer had no independent probable cause, but arrested appellant on an Alabama warrant which was void because accused had already been arrested on that warrant, incarcerated in Alabama, and released prior to his Florida arrest.) However, the reasoning underlying these cases does not sanction an escape by the arrestee, any more than it justifies violent resistance by the arrestee when confronted by an officer with a warrant, or allows an arrestee to forcibly retake possession of any property seized by an arresting officer under such circumstances. In either instance, as the facts here demonstrate, a life-threatening state of affairs is created by the arrestee's active resistance to the apparent authority of the state. We are persuaded that the considerations underlying the prohibition against the use of force to resist even an unlawful arrest would preclude us from adopting the view, espoused by appellant, that an escapee may rely upon some technical deficiency or irregularity in the warrant under which he has been taken into custody. See, Meeks v. State, 369 So.2d 109 (Fla. 1979); Lowery v. State, 356 So.2d 1325 (Fla. 4th DCA 1978); State v. Johnson, 382 So.2d 866 (Fla. 2nd DCA 1980).
We think the correct rule of law was recognized in State v. Fulkerson, 300 So.2d 276 (Fla. 2nd DCA 1974), in which the court stated (Id. at 278):
The better reasoned opinions appear to hold that where one is imprisoned under some color of law, he is not entitled to resort to self-help but must apply for his release through regular legal channels. The possibility of violence incident to a prison break dictates strongly against any other rule.
This rule was quoted and followed by this court, although on different facts, in State v. Alcantaro, 407 So.2d 922 (Fla. 1st DCA 1981). In Dupree v. State, 416 So.2d 1228, 1230 (Fla. 1st DCA 1982), we said: "In the absence of evidence to the contrary, custody pursuant to an arrest warrant will be presumed valid." Appellant argues that this statement implies the existence of the defense urged here. Again we disagree. Although this statement appears in response to an argument that the State had failed to prove lawful custody of the escapee because the State failed to prove that the arrest warrant for the escaping person was valid, our view is that the court merely recited the quoted rule in support of its determination that the state's evidence was sufficient, and did not indicate in any way its approval of a defense such as that sought to be interposed here, i.e., that the judge issuing the warrant incorrectly determined the existence of probable cause for its issuance. Appellant's contention on this issue runs counter to the "color of law" rule which as above noted has been followed by this court, as well as some other state and federal jurisdictions. See, annotation on justification for escape, 70 ALR2d 1430, and 70 ALR2d 1430 later case service; and 27 Am.Jur.2d, Escape, Prison Breaking, and Rescue, § 7, "Legality of custody, generally." We have examined the cases relied upon by appellant on this point and find no conflict with the rule we apply here. Cf. Abigando v. State, 239 So.2d 646 (Fla. 1st DCA 1970); Abbott v. State, 326 So.2d 204 (Fla. 1st DCA 1976); Estep v. State, 318 So.2d 520 (Fla. 1st DCA 1975); Fulford v. State, 113 So.2d 572 *859 (Fla. 2nd DCA 1959); Maggard v. State, 226 So.2d 32 (Fla. 4th DCA 1969); Williams v. State, 416 So.2d 493 (Fla. 5th DCA 1982).

III.
Turning to other issues, we find no error in the trial court's denial of a motion for judgment of acquittal, nor in the court's ruling on the state's "late disclosure" of witnesses. The state filed a supplemental response a few days before trial containing the names of three officers, all of whom were to testify as to merely formal matters dealing with appellant's arrest and detention in the Duval County Jail, none of these facts with respect to appellant's arrest and incarceration being in dispute. Furthermore, on the morning of the trial appellant's counsel admitted that he had taken the deposition of the witnesses the afternoon before. We conclude that the trial judge was sufficiently informed by the hearings on April 5, 1982 and April 8, 1982 to satisfy the Richardson requirements, and that there was no abuse of discretion in denying the motion to exclude. Richardson v. State, 246 So.2d 771 (Fla. 1971).

IV.
Appellant further urges that the trial court reversibly erred in denying appellant's motion in limine in which appellant sought an order restricting the state to introduction of only one capias for arrest, rather than introduction of all seven capiases upon which he was arrested. In Fouts v. State, 374 So.2d 22 (Fla. 2nd DCA 1979), the Second District held that reversible error occurred in an escape trial when the state was allowed to reveal to the jury the nature of the crime for which the defendant was serving a sentence at the time of his escape. Appellant acknowledges that the Supreme Court of Florida, in Parker v. State, 408 So.2d 1037 (Fla. 1982), disapproved the holding in Fouts v. State. Appellant urges, however, that although under the Parker decision the state is not precluded from proving the crime for which a defendant was being incarcerated at the time of his escape, nevertheless the state here should have been restricted to proof of just one capias, including the underlying offense charged in that case, rather than be permitted to prove that appellant was subject to prosecution for some thirteen different offenses. In other words, appellant argues, any slight probative value in proving the nature and number of the several offenses charged against appellant was outweighed by the prejudicial effect of this information upon the jury, citing Section 90.403, Florida Evidence Code, Florida Statutes (1981). All of the capiases were issued and served at the same time, and we find no basis upon which to hold that the trial court should have required the state to select only one of the capiases for submission into evidence on this issue.

V.
Finally, with respect to the state's "smoke screen" argument, we have condemned such language in the past, and have no intention of departing from our prior decisions on this point. See, Cochran v. State, 280 So.2d 42 (Fla. 1st DCA 1973); Reed v. State, 333 So.2d 524 (Fla. 1st DCA 1976); Simpson v. State, 352 So.2d 125 (Fla. 1st DCA 1977); Melton v. State, 402 So.2d 30 (Fla. 1st DCA 1981); Cooper v. State, 413 So.2d 1244 (Fla. 1st DCA 1982); and Westley v. State, 416 So.2d 18 (Fla. 1st DCA 1982). However, because of the absence of any substantial factual controversy which possibly could have been influenced one way or the other by this argument, we find harmless error.
The judgment of conviction and sentence are AFFIRMED.
BOOTH and ZEHMER, JJ., concur.

OPINION ON MOTION FOR REHEARING
LARRY G. SMITH, Judge.
In his motion for rehearing and request for en banc consideration or certification appellant redirects our attention to his *860 claim that the holding of Fouts v. State, 374 So.2d 22 (Fla. 2nd DCA 1979)  to the effect that it is reversible error to allow the state to prove the nature of the crime for which an accused was incarcerated at the time of his escape  has continued viability. Appellant's argument is bottomed on the assumption that Parker v. State, 408 So.2d 1037 (Fla. 1982), cited in our above opinion, dealt only with the state's right to reject the defendant's offer to stipulate to the fact of his previous conviction, and that the Parker decision left intact the Fouts v. State requirement that the nature of the crime be excised from the certified copy of the judgment and sentence introduced to prove a prior conviction.
It is true, as appellant argues, that the Fourth District's opinion in Parker v. State, 389 So.2d 336 (Fla. 4th DCA 1980), decision reviewed and approved Parker v. State, 408 So.2d 1037 (Fla. 1982), points out that no objection was made at trial concerning the portion of the judgment and sentence showing the nature of the defendant's prior felony conviction. It is also apparent that the Supreme Court's Parker v. State opinion does not expressly mention the excision issue. Nevertheless, the opinions of the Fourth District and the Florida Supreme Court hold that the state may introduce a certified copy of the defendant's prior judgment and sentence. Both opinions state that the document in that case was similar in form to that found in Rule 3.986, Florida Rules of Criminal Procedure. The form displayed in this rule contains a space for insertion of details including the nature and degree of the crime or crimes of conviction, as well as the offense statute numbers. We think it is highly unlikely, given the absence of any qualifying expression in the Supreme Court's opinion, that the court intended to approve use of a certified copy of a judgment and sentence only if the nature of the offense of conviction is first excised.
The Parker opinion, on the other hand, does specifically point out that rulings on the admissibility of prior conviction evidence must be determined in the light of Sections 90.402 .403, Florida Evidence Code (Florida Statutes, 1979). This means that evidence of prior convictions must be restricted if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, or needless presentation of cumulative evidence." Parker v. State, 408 So.2d at 1038. As noted in our above opinion, we considered and rejected appellant's argument that the trial court erred in failing to require the state to limit its proof under this standard.
As for appellant's contention that our decision conflicts with our prior decision in Hall v. State, 400 So.2d 102 (Fla. 1st DCA 1981), petition for review dismissed, 412 So.2d 470 (Fla. 1981), we first judicially notice certain facets of the procedural history of that case which are somewhat pertinent here, but nevertheless are not mentioned in the motion for rehearing or for en banc consideration. These facts are as follows: This court reversed Hall's conviction and ordered a new trial. 400 So.2d at 103. The Florida Supreme Court accepted jurisdiction for discretionary review on petition of the State of Florida alleging conflict with Parker v. State, 389 So.2d 336 (Fla. 4th DCA 1980), but refused to stay the First District's mandate. Petition for review was later dismissed by the Florida Supreme Court upon the state's suggestion for dismissal on the ground of mootness, in that while review was pending Hall had been retried, convicted, and sentenced to forty years imprisonment. This dismissal of the petition for review occurred on December 22, 1981. See 412 So.2d 470. Of course, shortly thereafter, on January 7, 1982, the Florida Supreme Court issued its Parker v. State decision. See 408 So.2d 1037.
Secondly, our Hall v. State decision relied on Fouts v. State (later disapproved by the Florida Supreme Court, Parker v. State, supra), for the proposition that in Hall's trial for robbery, aggravated battery, and possession of a firearm by a convicted felon, *861 the nature of the crime should have been excised from the judgment and sentence introduced by the state to prove Hall's prior felony conviction of robbery. The Florida Supreme Court's disapproval of Fouts v. State alone casts doubt upon the continued precedential value of our Hall decision on the issue of excision (our reversal was also based on a second ground  error in jury instructions). But we need not address here the question of whether our Hall decision may be relied upon as requiring excision of the nature of the crime under the now rejected Fouts v. State rationale. This is so because in Hall we found (400 So.2d at 103): "The prejudicial impact of disclosing to the jury a prior conviction for robbery when appellant was then being tried for armed robbery requires reversal." (emphasis supplied). We interpolate that this holding would not necessarily mandate a similar result in the case of a defendant being tried only on a charge of possession of a firearm by a convicted felon, nor, it logically would follow, on a charge of escape, as here. It should also be noted that this court in Hall considered that disclosure of the nature of Hall's prior conviction was unnecessary in that case, because the state had already introduced the unrefuted testimony of an attorney who had previously represented Hall on a felony charge. Our Hall decision may properly be viewed, therefore, as falling within the ambit of Section 90.402-.403, Florida Evidence Code, rather than as standing for a per se rule of excision of the nature of the crime in every case in which proof of the prior conviction is an essential element. See, Parker v. State, 408 So.2d at 1038.
We are of the view that our decision is not at variance with Fouts v. State, Parker v. State, or Hall v. State, supra. Further, we see no need for further consideration of alleged conflict with Dupree v. State, 416 So.2d 1228 (Fla. 1st DCA 1982), which we specifically discussed in our original opinion. Much of the discussion of the Dupree case and other matters in the motion is simply reargument.
We adhere to our original decision and opinion, as above amplified, and affirm the judgment of conviction and sentence.
BOOTH and ZEHMER, JJ., concur.